LOUISVILLE AND NASHVILLE RAIL-
ROAD COMPANY, Appellant,

v.

DEPARTMENT OF REVENUE, Common-
wealth of Kentucky, and the Kentucky
Board of Tax Appeals, Appellees.

Court of Appeals of Kentucky.

May 13, 1977.

Marion Rider, Frankfort, Robert C. Moore, Louisville, for appellant.

William P. Sturm, Atty., Legal Staff, Dept. of Revenue, Frankfort, for appellees.

Before COOPER, HOGGE and REYN-OLDS, JJ.

COOPER, Judge.

Appellant filed with the Department of Revenue a claim for refund of sales and use taxes paid by it for the period from July 1, 1960, through September 30, 1964, the amount of which was ultimately established to be $99,388.83.

Appellant, Louisville and Nashville Railroad Company, a Kentucky corporation, operates an interstate railroad system traversing thirteen states through nine operating divisions. Each operating division extends into more than one state. Six of these operating divisions have trackage in Kentucky.

During the period in question, Appellant purchased certain roadway machinery and equipment, including repair and replacement parts, from manufacturers outside Kentucky for use in its system-wide maintenance of way operations. After purchase, some of this machinery and equipment was brought to Louisville, Kentucky, for inspection and application of maintenance of way equipment numbers. The machinery and equipment then continued without being unloaded to a designated division for unloading and use. Other machinery was shipped by the manufacturer direct to the designated division location. No record was maintained as to the place of initial or subsequent use of such equipment other than the division within which it was being used at a given time.

The Department of Revenue determined the percentage of such equipment to be subject to the Kentucky Sales and Use taxation by a formula using the percentage of total system operating expenses of the Appellant applicable to Kentucky. The Department of Revenue used the same percentage formula in determining the amount of repair and replacement parts to be allocated to Kentucky for determining the tax involved.

The repair or replacement parts are installed on such equipment at Appellant's repair shops located in Louisville and Paris, Kentucky, and Boyles, Alabama. Eighty-seven percent (87%) of the equipment repaired in Kentucky is shipped outside of the state after such repairs have been completed.

It is Appellant's position that the roadway machinery and equipment, as well as repair and replacement parts, are not taxable because such property was used in the furtherance of interstate commerce, and that the tax would place undue burden upon such commerce. It further urges that such machinery and equipment was exempt as rolling stock under KRS 139.480(1). The Department of Revenue contended that such machinery and parts were taxable under KRS 139.320, which imposes a use tax upon machinery and equipment brought into this State for construction or repair of steam or electric railway systems.

The issues considered are (1) whether certain roadway machinery and equipment, including their repair and replacement parts, purchased by Appellant outside the Commonwealth of Kentucky for use in maintaining its multi-state railroad right-of-way are exempt from Kentucky use taxation by virtue of the fact that (a) under KRS 139.-480(1) such equipment constitutes "rolling stock, including materials for the construction, repair, or modification thereof . . used or to be used in interstate commerce", or (b) that the taxation of such equipment violates Article 1, Section 8 of the Federal Constitution as an impermissible burden on interstate commerce.

The controversy is limited as to whether or not L & N's roadway machinery and equipment plus repair and replacement parts for that equipment are exempt from taxation on the basis the assessment levied here (1) is a burden on interstate commerce and (2) violates KRS 139.480(1).

The Kentucky Board of Tax Appeals by order No. K-1631, dated May 8, 1969, held that, under the facts presented, the language used in KRS 139.480(1) was not broad enough to justify its application to the machinery and equipment, or repair and replacement parts for such machinery, used by L & N to repair and maintain its multi-state track and right-of-way. The Board further found that the taxation of such items of equipment presents no undue burden upon interstate commerce, even though it may affect to some degree the cost of conducting such business.

The Board also found that materials withdrawn by the Appellant from its stores at the South Louisville shops for the construction, repair or modification of its locomotives and rolling stock, and electricity, coal and water used in general shop operations were not exempt from Kentucky use taxation under KRS 139.480(1).

By order entered on July 6, 1976, in Civil Action No. 76438, the Franklin Circuit Court sustained that portion of the Order of the Board of Tax Appeals which upheld the

taxation of Appellant's roadway machinery and equipment including repair and replacement parts. The lower Court remanded to the Board of Tax Appeals the remaining issues in order that the Board might make written findings as required by KRS 131.160.

Much has been said by both parties concerning "rolling stock" including materials used, or to be used, in interstate commerce.

All words and phrases in a statute shall be construed according to the common and approved usage of language such as found in a common dictionary. KRS 446.080(4). *Black's Law Dictionary* defines "rolling stock" as the portable or movable apparatus and machinery of a railroad, particularly such as moves on the road, VIZ., engines, cars, tenders, coaches and trucks.

The ordinary, everyday meaning of "rolling stock" does not encompass the Appellant's roadway machinery equipment and materials used for maintenance, but applies to locomotives, flat cars, box cars, coaches, cabooses and coal cars.

■ We take the position that the term "materials" as used in KRS 139.480(1) includes only those items which become a component part of the locomotive or rolling stock being constructed, repaired or modified.

KRS 139.480(1) also requires "rolling stock" to be used in "interstate commerce".

In 68 *Am.Jur.2d, Sales and Use Taxes* § 190 (1973), the following statement is made in reference to sales and use taxes:

Unlike the situation existing with respect to sales tax statutes, the decisions relating to use tax statutes have for the most part been consistent in holding that, in their application to tangible personal property carried into the state and there brought to rest permanently, or merely halted for a moment before resuming its interstate course or character, taxes upon the privilege of use, storage, or consumption within the state do not impose an unconstitutional burden on interstate operations or instrumentalities.

The landmark United States Supreme Court decision in *Southern Pacific Company v. Gallagher*, 306 U.S. 167, 59 S.Ct. 389, 83 L.Ed. 586 (1939) holds precisely this. The facts in *Southern Pacific* as stated by the Court through Justice Reed at 306 U.S. 172, 59 S.Ct. 391, 83 L.Ed. 590 were as follows:

The Appellant, the Southern Pacific Company, a Kentucky corporation, handles intrastate, interstate and foreign commerce over its railroad system which traverses a number of states and connects with the lines of carriers covering the continent. The findings and stipulation of facts show continual extrastate purchases of tangible personalty for the operation of the road; rails, equipment machinery, tools and office supplies. Some of the purchases are used in the general offices of the Corporation, located in California, for the supervision of the wideflung activities; others are for material kept in readiness as a stand-by supply to replace or repair equipment damaged, destroyed or worn out in the operation of the road; and still others are to make improvements, replacements or extensions pursuant to previously determined plans and specifications. Few, if any, of the supplies are stored for long term needs. Storage is merely incidental to protection until use, as office supplies in a closet or an extra frog at a section tool house. For construction or reconstruction upon a large scale, special orders are given and arrangements made, so that the material is fabricated for a particular use in the transportation facilities, shipped to its California destination and installed upon arrival. To avoid delay and cost the movement from loading to final placement is as nearly continuous as managerial efficiency can contrive. While some articles are capable of general use, the major purchases of rails, repair parts and supplies for the maintenance and operation of the system are adapted only to railroad use. The purchases are paid for out of railroad operating capital and move on company material waybills, without transportation charge. All purchases may be said to be dedicated to

consumption in the interstate transportation business of appellant. No new rolling stock is involved. Subsequent to repairing and reconditioning, rolling stock moves again in interstate transportation, as do cars after being stocked with supplies. The California tax on storage or use, it is said, cannot apply to these articles, as such a tax would be an unconstitutional burden upon the facilities of interstate commerce, of which the articles are a part.

In holding that the rails, equipment, machinery and tools were subject to California's use tax, the Court at 306 U.S. 176, 59 S.Ct. 393, 83 L.Ed. 593 stated:

In the present case some of the articles were ordered out of the state under specification suitable only for utilization in the transportation facilities and installed immediately on arrival at the California destination. If articles so handled are deemed to have reached the end of their interstate transit upon "use or storage", no further inquiry is necessary as to the rest of the articles which are subjected to a retention, by comparison, farther removed from interstate commerce. We think there was a taxable moment when the former had reached the end of their interstate transportation and had not begun to be consumed in interstate operation. At that moment, the tax on storage and use—retention and exercise of a right of ownership, respectively—was effective. The interstate movement was complete. The interstate consumption had not begun.

The roadway machinery and materials not exempt had a "taxable moment" in Kentucky. It will be noted that approximately thirty-five percent (35%) of the total was taxed in Kentucky, and in the absence of records no counter formula for taxation was offered by the Appellant.

If the findings of a state administrative agency are supported by substantial evidence it should not be disturbed.

We have examined the record in this case, and have determined that the assessment levied is not a burden on interstate commerce and does not violate KRS 139.480(1).

The judgment is affirmed.

All concur.